Opinion filed March 23, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed March 23, 2006

 

 

 

 

 

 

                                                                        In The

 

    Eleventh Court of Appeals

                                                                  ___________

                                                          No. 11-05-00230-CV 

                                                     __________

 

                      KELLY
KUYKENDALL AND HUSBAND, TERRY

                                        KUYKENDALL,
Appellants

                                                             V.

    MICHAEL J.
DRAGUN, M.D. AND WEST TEXAS UROLOGY, Appellees

 



 

                                        On
Appeal from the 142nd District Court

                                                        Midland
County, Texas

                                                 Trial
Court Cause No. CV45114

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

This is a medical malpractice action.  Michael J. Dragun, M.D. and West Texas
Urology filed a motion to dismiss contending that Kelly and Terry Kuykendall=s expert report did not satisfy the
requirements of Tex. Rev. Civ. Stat.
art. 4590i, ' 13.01
(2001).[1]  The trial court granted appellees= motion to dismiss and denied
appellants= request
for an extension of time to file an amended report.  We find no error and affirm.

                                                                          Facts








Kelly Kuykendall underwent a bilateral
salphingo-oophorectomy and a laparoscopic-assisted vaginal hysterectomy on June
24, 2002.  The surgery was performed by
Dr. Brady Locke.  Kelly=s bladder was perforated during the
surgery.  Dr. Dragun was contacted and
was asked to repair the injury.  He
performed a laparotomy and was assisted in the procedure by Dr. Locke.

The original surgery was scheduled for two
hours.  Because of the bladder
complication, the surgery lasted six hours. 
Appellants allege that Kelly=s
peripheral nerves were damaged during the extended surgery.

Appellants filed a medical malpractice action
against Dr. Dragun and other health care providers on May 29, 2003.  They timely filed the expert report and
curriculum vitae of Dr. Mearl A. Naponic. 
Appellees filed a motion to dismiss, contending the expert report did
not satisfy the requirements of Article 4590i, section 13.01.  Appellants responded that Dr. Naponic=s expert report was sufficient and,
alternatively, requested an Article 4590i, section 13.01(g) thirty-day
extension. The trial court conducted a hearing and granted appellees= motion to dismiss and denied
appellants= request
for an extension.

                                                                         Issues

In two issues, appellants contend that their
expert report satisfies the requirements of Article 4590i, section 13.01 or,
alternatively, that the trial court abused its discretion by denying their
request for an Article 4590i, section 13.01(g) thirty-day grace period to amend
their report.

                                                              Standard
of Review

A trial court=s
decision to dismiss a lawsuit because of an inadequate expert report is
reviewed under an abuse of discretion standard. 
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 878 (Tex. 2001).  A trial court=s decision to grant or deny an Article
4590i, section 13.01(g) grace  period is
also reviewed under an abuse of discretion standard.  Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003).

A trial court abuses its discretion if it acts in
an arbitrary or unreasonable manner without reference to any guiding rules or
principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  A reviewing court is not allowed to
substitute its judgment for that of the trial court when reviewing a
discretionary decision.  Flores v.
Fourth Court of Appeals, 777 S.W.2d 38, 41-42 (Tex. 1989).  The mere fact that a trial court may decide a
matter within its discretionary authority in a different manner than an
appellate court in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Downer,
701 S.W.2d at 241-42.

 








                                       Does
Dr. Naponic=s Report
Satisfy Article 4590i?

In Palacios, 46 S.W.3d at 878-79, the
supreme court outlined the criteria for evaluating the efficiency of expert
reports.  Specifically, the court wrote:

[T]he
expert report must represent only a good-faith effort to provide a fair summary
of the expert=s
opinions.  A report need not marshal all
the plaintiff=s proof,
but it must include the expert=s
opinion on each of the elements identified in the statute.  In setting out the expert=s opinions on each of those elements,
the report must provide enough information to fulfill two purposes if it is to
constitute a good-faith effort.  First,
the report must inform the defendant of the specific conduct the plaintiff has
called into question.  Second, and
equally important, the report must provide a basis for the trial court to
conclude that the claims have merit.

 

A report that merely states the expert=s conclusions about the standard of
care, breach, and causation does not fulfill these two purposes.  Nor can a report meet these purposes and thus
constitute a good-faith effort if it omits any of the statutory
requirements.  However, to avoid
dismissal, a plaintiff need not present evidence in the report as if it were
actually litigating the merits.  The
report can be informal in that the information in the report does not have to
meet the same requirements as the evidence offered in a summary-judgment
proceeding or at trial.  (citations
omitted)

 

Courts have identified additional considerations when multiple
defendants are sued.  In that instance,
the expert report must provide an explanation of how each defendant
specifically breached the applicable standard of care and how that breach
caused or contributed to the cause of injury. 
Taylor v. Christus Spohn Health Sys. Corp., 169 S.W.3d 241, 244
(Tex. App.CCorpus
Christi 2004, no pet.).

That portion of Dr. Naponic=s
expert report which addressed Dr. Dragun=s
actions contained the following language:

On
June 24, 2002, Kelly Kuykendall underwent bilateral salphingo-oophorectomy, as
well as a laparoscopic assisted vaginal hysterectomy.  Theses [sic] surgical treatments were
performed in an effort to relieve pre-operative symptoms of pelvic pain,
dysmenorrhea and menorrhagia and failed medical management of same.  The initial procedure scheduled for two hours
was performed by Dr. Brady Locke and was complicated by an intra-operative
injury to the bladder.  The perforation
of the bladder necessitated surgical repair; and, thus this two hour surgery
evolved into a six hour surgery, involving a laparotomy to repair an incision
into the bladder of approximately eight to nine centimeters.  This second surgery was performed by Dr.
Michael Dragun and assisted by Dr. Brady Locke.

 








The
standard of care for such procedures as described above, necessarily require[s]
that the peripheral nerves in and adjacent to the operative site be identified
and protected.  This is particularly true
when a self-retaining retractor is used and the length of the surgery is
prolonged.  Complications, including
nerve injuries, from self-retaining retractors are well-known and
well-described in the relevant literature. 
Failing to properly pad the self-retaining retractor, failure to
adequately position the patient and/or leaning on the patient during this
prolonged surgery are the most likely cause of the intra-operative injuries and
complications suffered by Kelly Kuykendall and are below the accepted standard
of care for these procedures.  As both
Dr. Locke and Dr. Dragun performed the bladder repair, they shared the
responsibility to protect Kelly Kuykendall against this injury.

 

A fair summary is something less than a full statement of the
applicable standard of care and how it was breached.  A fair summary must set out what care was
expected but not given.  Palacios,
46 S.W.3d at 880 (A[w]hether
a defendant breached his or her duty to a patient cannot be determined absent
specific information about what the defendant should have done differently@). 
An expert report must show causation beyond mere conjecture.  Bowie Mem=l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).  Knowing what specific conduct the plaintiff=s expert has called into question is
critical to both the defendant=s
ability to prepare for trial and the trial court=s
ability to evaluate the viability of the plaintiff=s
claims.  Palacios, 46 S.W.3d at
876-77.  Dr. Naponic=s report does not provide this level of
information because his analysis is premised on several assumptions and because
he fails to distinguish between the actions of Dr. Locke and Dr. Dragun.

Dr. Naponic=s
analysis is similar to a res ipsa approach. 
Because Kelly suffered from peripheral nerve damage and because the relevant
literature documents a connection between that injury and the failure to
properly pad self-retaining retractors, improperly positioning the patient, or
leaning on the patient, Dr. Naponic assumes that these are the Amost likely@
causes of her injury.  He assumes further
that Dr. Locke and Dr. Dragun are collectively responsible for one or more of
these actions.[2]








There are several problems with this
approach.  First, Dr. Naponic=s report does not document that a
self-retaining retractor was even used or, if so, by whom.  This is not a question of mere
semantics.  Dr. Dragun cannot be held
responsible for any actions taken before he arrived in the operating room, nor
can he be held responsible for improperly using equipment that was never
utilized.  Knowing what Dr. Naponic
alleges Dr. Locke did during the initial portion of the procedure and what Dr.
Naponic alleges happened during Dr. Dragun=s
portion of the procedure are vital.

Second, even assuming Dr. Dragun used a
self-retaining retractor, Dr. Naponic did not document how it was padded or how
it should have been padded.  Third, the
report does not document how Kelly was positioned at any point in time during
her surgical procedure, nor how she should have been positioned during Dr.
Dragun=s
procedure.  Finally, the report provides
no support for his hypothesis that Dr. Dragun leaned on Kelly beyond his
contention that this is frequently the cause of her type of injury.

The supreme court=s
holding in Palacios, 46 S.W.3d at 873, that a trial court=s decision to grant a motion to dismiss
is subject to an abuse of discretion review, mandates that we provide trial
courts with some deference when determining what constitutes a good faith
effort to comply with the statute in a particular case.  Because Dr. Naponic=s
report failed to provide specific information concerning Dr. Dragun=s conduct, because he assumed the two
doctors were equally responsible for Kelly=s
injury, and because Dr. Naponic relied upon assumptions to determine the Amost likely@
cause of her injury, we hold the trial court did not abuse its discretion when
it granted appellees=
motion to dismiss.  Appellants= first issue is overruled.

                Were
Appellants Entitled To A Thirty-Day Extension To Amend Their Report?

Article 4590i, section 13.01(d) required claimants
to furnish an expert report within 180 days after the claim was filed.  Article 4590i, section 13.01(g) gave trial
courts the discretion to provide a thirty-day grace period to file an amended
report if the failure to timely file an adequate report Awas
not intentional or the result of conscious indifference but was the result of
an accident or mistake.@








In their response to appellees= motion to dismiss, appellants included
an alternative request for a thirty-day extension based upon their belief that
Dr. Naponic=s report
was adequate and, if not, contended that their failure to provide an adequate
report was due to accident or mistake and not an intentional act or conscious
indifference.  Appellants= request was supported by the testimony
of their trial counsel who stated that he contacted Dr. Naponic based upon the
referral of a general surgeon, that he provided Dr. Naponic with the relevant
records and caselaw, that they discussed this case, that Dr. Naponic indicated
that it would be difficult to distinguish from the medical records which
defendant caused the intraoperative injuries absent an admission, but that Dr.
Naponic informed him that all the health care providers shared a duty to
protect Kelly.  Counsel testified that he
relied upon Dr. Naponic, who was a board-certified obstetrician and
gynecologist, to provide him with a sufficient report and that he believed Dr.
Naponic had done so.

The Texas Supreme Court faced a similar situation
in Walker, 111 S.W.3d at 56. 
There, as here, claimant=s
counsel mistakenly believed that his expert=s
report was sufficient.  The supreme court
comprehensively reviewed intermediate court decisions on Article 4590i, section
13.01(g) extensions, finding that some courts were erroneously holding that any
mistake of law was sufficient to support an extension while others were
impermissibly applying a standard that precluded an extension because of a
mistake of law.  Id. at
63-64.  According to the supreme court,
some B but not
all B mistakes
of law may negate a finding of intentional conduct or conscious indifference
and, therefore, support an extension. 
The distinction turns on the knowledge and acts of the claimant.  Id. at 64.

The supreme court concluded that counsel=s belief that his expert=s report was sufficient, despite clear
statutory requirement to the contrary, Adoes
not establish a >sufficient
excuse=
necessary to support a finding that a party made a mistake of law.@ 
Id. at 64-65.  This follows
because a medical malpractice claimant is charged with knowledge of Article
4590i, section 13.01 and its requirements. 
Id.  Appellants distinguish
Walker by alleging it involved a report which was absent the relevant
standard of care and how the defendants breached that standard.  Appellants contend that, if their report is
inadequate, it is not because of the absence of a critical element but simply
insufficient information.








The trial court is best positioned to assess what
appellants knew and to evaluate their actions. 
The extent and quality of the information available to a
medical-malpractice claimant will vary from case to case.  That information directly impacts the report
a good faith effort will produce.  We
have found that the trial court did not abuse its discretion when it held Dr.
Naponic=s report
was insufficient because Dr. Naponic failed to distinguish between the actions
of the two doctors and because his analysis relies heavily on assumption.  During oral argument, appellants= counsel pointed out that physicians
are unlikely to admit to errors in their medical records and, therefore, that
one cannot expect doctors to affirmatively state that they leaned on their
patient during surgery.  Even if we
accept this as true, the medical records would contain information on the
surgical equipment utilized, the manner in which the patient was positioned,
and the surgery conducted.  Because two
different doctors operated on Kelly, their respective records would provide
information unique to each doctor and their procedures.  The trial court could have reasonably
concluded that in this case appellants had the ability to distinguish between
the actions of the two doctors and determine what surgical equipment and
procedures were utilized and that their failure to do so precluded a thirty-day
grace period.

The cases decided since Walker indicate
that the trial court=s
decision to grant or deny a thirty-day grace period when counsel argues that
his mistaken belief that a report was sufficient constitutes a mistake of law,
are afforded great deference due to their individual factual patterns.  Compare In re Zimmerman, 148 S.W.3d
214, 217 (Tex. App.CTexarkana
2004, orig. pro-ceeding)(affirming the trial court=s
decision to grant a thirty-day grace period based upon mistake of law) with
Sandles v. Howerton, 163 S.W.3d 829, 838 (Tex. App.CDallas
2005, no pet.)(affirming the trial court=s
decision to not grant a thirty-day grace period based upon a mistake of law).

We cannot say that the trial court abused its
discretion when it denied appellants=
request for a thirty-day grace period. 
Appellants= second
issue is overruled.

                                                                     Conclusion

The trial court did not abuse its discretion when
it granted appellees=
motion to dismiss and denied appellants=
request for a thirty-day grace period. 
The trial court=s
judgment is affirmed.

 

 

RICK STRANGE

JUSTICE

 

March 23, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.                                                                                            











[1]Although applicable to this case, Article 4590i was
repealed effective September 1, 2003; and the subject matter is now governed by
Tex. Civ. Prac. & Rem. Code Ann.
' 74.351 (Vernon Supp. 2005).





[2]In Palacios, the supreme court noted that, as a
general rule, res ipsa loquitur does not apply in medical malpractice
cases.  46 S.W.3d at 880.  Consequently, an expert report must do more
than simply assume that a health care provider is responsible for any surgical
complication.